THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BALAPUWADUGE MENDIS, et al.,

Plaintiffs,

v.

SCHNEIDER NATIONAL CARRIERS INC,

Defendant.

CASE NO. C15-0144-JCC

ORDER

This matter comes before the Court on Defendant Schneider National Carriers motion for summary judgment (Dkt. No. 43), Plaintiffs' motion for leave to amend the complaint (Dkt. No. 49), and Plaintiffs' motion to certify question to the Washington Supreme Court (Dkt. No. 73). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part Schneider's motion for summary judgment (Dkt. No. 43), GRANTS in part and DENIES in part Plaintiffs' motion to amend the complaint (Dkt. No. 49), and DENIES Plaintiffs' motion to certify question to the Washington State Supreme Court (Dkt. No. 73) for the reasons explained herein.

**I. BACKGROUND**

Plaintiffs Balapuwaduge Mendis and Michael Feola are current and former truck drivers for Defendant Schneider. (Dkt. No. 39 at 3.) Schneider is a truckload company that services customers throughout the United States. (*Id.* at 1.) Schneider operates one of its locations out of

Sumner, Washington. (*Id.* at 2.) Plaintiffs allege that Schneider has engaged in a common scheme of wage and hour violations against its driver employees. (*Id.*) Specifically, "[t]his scheme has included failing to pay driver employees for all hours worked, making unlawful [wage] deductions . . ., failing to [issue] itemized wage statements, and failing to pay driver employees for the rest breaks to which they are entitled." (*Id.*) Schneider moves for summary judgment dismissing all but the willful refusal to pay wages claims. (Dkt. No. 43 at 4; Dkt. No. 39 at 10.)

## II. DISCUSSION

### A. Plaintiffs' motion to amend complaint.

As an initial matter, the Court will address Plaintiffs' motion for leave to file a second amended complaint. The amended complaint seeks to add two putative class representatives, Andrea Arbaugh and Edward Ash. (Dkt. No. 49 at 4.) Plaintiffs also seek to add an additional claim for "time spent driving to and from and participating in mandatory medical testing." (Dkt. No. 50 at 11.)

The district court is afforded discretion to grant leave to amend and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The generosity in granting leave to amend is "to be applied with extreme liberality" as there is a strong presumption in favor of granting leave to amend a complaint. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). Courts are to consider five factors in granting leave to amend a complaint: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the complaint has previously been amended. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

Turning first to Plaintiffs' request to add two class representatives, Plaintiffs did not receive potential class member discovery from Schneider until June 28, 2016, and only following an order granting a motion to compel. (Dkt. No. 84 at 2–3.) Plaintiffs then worked to interview potential class members over the next two and a half months. (*Id.* at 3.) Ash and Arbaugh agreed

to serve as class representatives on September 14 and 15, respectively, and Plaintiffs moved to amend the complaint on September 16, 2016. (*Id.*) Given these facts, the Court cannot say that Plaintiffs' motion to amend is the result of bad faith or undue delay. For the same reasons, the Court gives little weight to the fact that Plaintiffs previously amended the complaint to add Feola. Adding two class representatives is not futile, as Ash and Arbaugh are relevant to Plaintiffs' motion for class certification. (*Id.* at 5–6; *see also Manual for Complex Litigation (Fourth)* § 21.26, at 277 (2016) ("[C]ourts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative who meets the Rule 23(a) requirements.").) Finally, the addition of Ash and Arbaugh will not prejudice Schneider, as the claims remain the same.

As to the additional claim, this was added after Schneider filed a motion for summary judgment. Plaintiffs could have alleged this claim earlier, but did not. (*See* Dkt. No. 79 at 3.) Amending a complaint "is not a vehicle to circumvent summary judgment." *Matthews v. Nationstar Mortgage*, 2016 WL 865352, at *2 (W.D. Wash. Mar. 7, 2016) (citing *Burdett v. Reynoso*, 399 Fed. App'x. 276, 278 (9th Cir. 2010)). The additional claim for time spent participating in mandatory medical testing supplements Plaintiffs' "on duty not driving" claim. There is a case from this district directly on point, which dismissed similar "on duty, not driving claims." Plaintiffs' "on duty, not driving" claim, as discussed below, is dismissed. Therefore, Plaintiffs' motion to add a claim is untimely and evinces an attempt to avoid summary judgment. Plaintiffs' motion for leave to amend the complaint is GRANTED in part and DENIED in part. Plaintiffs may amend the complaint to add Ms. Arbaugh and Mr. Ash, but may not amend to allege additional claims.

**B. Schneider's Motion for Summary Judgment.**

Schneider moves for summary judgment on all but one of Plaintiffs' claims. Schneider argues that Plaintiffs' (1) "on duty, not driving" claim fails as a matter of law, (2) training time claims fails because they were paid for all trainings, (3) rest break claim fails because

compensation is included in the piece-rate system and even if it is not, the rest break regulation would violate the dormant Commerce Clause, (4) per diem claims fail because they do not involve "deductions" and are federally preempted, (5) fuel card deduction claims fail because Plaintiffs consented,"[1] and (6) overtime claims fail because the mileage piece-rate averages out to the reasonable equivalent of what a similarly situated driver would make hourly, including overtime pay. (Dkt. No. 43 at 4.)

      The Court shall grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court views the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

---

[1] The Court finds the inclusion of a fuel card claim curious, as it was neither found in Plaintiffs' complaint nor discussed in Schneider's motion. Accordingly, the Court does not address it.

1. <u>Plaintiffs' Training Time Claim</u>

Plaintiffs allege Schneider failed to pay the minimum wage for training. (Dkt. No. 39 at 6.) However, it failed to produce evidence to rebut Schneider's evidence (Dkt. Nos. 47-3 and 47-4) that Schneider pays $10 an hour for all training. Further, in Plaintiffs' proposed second amended complaint, the failure to pay minimum wage for training claim has been deleted. That claim is DISMISSED and the Court will not consider it further.

2. <u>Plaintiffs' On Duty, Not Driving Minimum Wage Claim</u>

Schneider pays its long haul drivers on a piece-rate system by the mile with additional pay for certain accessorials—specified tasks which fall outside of those typically necessary to deliver a load. (Dkt. No. 43 at 5–6.) Paid accessorials include hand loading and unloading the truck, a New York City premium, and breakdown pay. (*Id.* at 5.) Tasks that Schneider argues are included in the piece-rate include inspecting the truck, completing paperwork, fueling, and waiting for the truck to be unloaded. (*Id.*) These tasks constitute "on duty, not driving" time. (Dkt. No. 39 at 6–7.) Plaintiffs allege that under Washington's Minimum Wage Act ("MWA"), Wash. Rev. Code. 49.46 *et seq.*, they should be compensated at an hourly rate for on duty, not driving time. (*Id.*) Schneider argues that this claim conflicts with Washington law. (Dkt. No. 43 at 9.)

The MWA "provides flexibility in negotiating the method and amount of compensation in an employment relationship." *Helde v. Knight Transp., Inc. (Helde II)*, 2016 WL 1687961, at *1 (W.D. Wash. April 26, 2016). In *Helde II*, the plaintiffs were truck drivers who argued that the MWA required the defendant to pay them for non driving time. The court examined the MWA and Washington Administrative Code ("WAC") 296-126-021 and 296-128-550 and held that "as long as the employer pays its employees the equivalent of the minimum wage rate for each hour of work, the parties are free to establish a . . . piece rate . . . or other system of compensation." *Id.* (citing *Inniss v. Tandy Corp.*, 7 P.3d 807, 815 (Wash. 2000) (upholding

employer's choice "not to calculate the regular rate as 'hourly rate' but as a ration of weekly base salary to total hours worked in a workweek. The [MWA] permits this choice.")).

Plaintiffs do not argue that Schneider's piece-rate, averaged over the course of a work week, amounts to an hourly wage less than the minimum wage. Rather, just as the plaintiffs in *Helde II*, they argue that under Washington law, employers must pay for every hour of work, and that because Schneider's piece-rate is based on a per-mile calculation, it covers only hours spent driving. (Dkt. No. 70 at 22–24.) This Court reiterates the finding in *Helde II* that "Plaintiffs' underlying assumption is faulty: the MWA does not require payment on an hourly basis." 2016 WL 1687961, at *2.

Plaintiffs acknowledge the district court's holding in *Helde II*, but argue it was reached in error, (Dkt. No. 70 at 24–25), and filed a motion to certify the question to the Washington Supreme Court. (Dkt. No. 73.) Plaintiffs argue that the Washington Supreme Court's decision in *Demetrio v. Sakuma Bros. Farms, Inc.*, 355 P.3d 258, 266 (Wash. 2015), which held that agricultural workers should be paid for rest breaks, should be extended to piece-rate employees for non-production hours worked. (Dkt. No. 73 at 8–12.) Plaintiffs maintain that this question may only be answered by the Washington Supreme Court.

"Certification of questions of state law to the highest court of the state 'provides a means to obtain authoritative answers to unclear questions of state law.'" *Micomonaco v. State of Wash.*, 45 F.3d 316, 322 (9th Cir. 1995) (quoting *Toner v. Lederle Lab.*, 779 F.2d 1429, 1432 (9th Cir. 1986)). Revised Code of Washington section 2.60.020 provides the standard for certifying a question to the Washington Supreme Court:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto.

However, the "Washington Supreme Court does not operate as a court of appeals for decisions of

[district courts].” *Hann v. Metro. Cas. Ins. Co.*, 2012 WL 3098711, at *3 (W.D. Wash. July 30, 2012). “There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision.” *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) (internal quotation marks omitted).[2] Where the state court is in no better position than the federal court to interpret the state statue, certification is inappropriate. *Micomonaco*, 45 F.3d at 322.The decision to certify a question rests in the discretion of the district court. *Id.*

Here, the facts weigh against certifying the question. First, this Court has already issued a decision on point. *See Helde II*, 2016 WL 1687961 (W.D. Wash. April 26, 2016). Second, that decision interpreted state statutes, and nothing in *Helde II* suggests the Washington Supreme Court would have been in a better position to answer the question. Finally, it appears that Plaintiffs are attempting to seek appellate review of this Court’s decision in *Helde II*. The timing of Plaintiffs’ motion is also suspect. Plaintiffs could have moved to certify this question long ago. Schneider removed this case to federal court in January 2015, yet Plaintiffs’ filed their motion to certify in September 2016, and only after Defendant’s motion for summary judgment argued that *Helde II* barred their on duty, not driving claim. For the foregoing reasons, Plaintiffs’ motion to certify a question to the Washington Supreme Court (Dkt. No. 73) is DENIED. Defendant’s motion for summary judgment as to the on duty, not driving claim is GRANTED.

3. Plaintiffs’ Rest Break Claims

Plaintiffs argue that under *Demetrio v. Sakuma Bros. Farms, Inc.*, 355 P.3d 258 (Wash. 2015), and WAC 296-126-092(4), Washington law prohibits the inclusion of rest breaks in piece-rate pay structures. Schneider responds that *Sakuma* only applies to agricultural workers and that it already pays its drivers for their rest breaks as part of their mileage rate compensation.

---

[2] The Court acknowledges the different procedural posturing in *Thompson*, as it involved a motion to certify a question to the Arizona Supreme Court in the same case and in a motion for reconsideration. Regardless, the Court finds certification unwarranted when there is a sound decision from the Western District of Washington on point.

(Dkt. No. 43 at 12.) Schneider goes on to argue that even if *Sakuma* applies to Plaintiffs' rest break claims, the dormant Commerce Clause precludes the rest break regulation from governing periods worked wholly outside of Washington. (*Id*. at 13.)

A court in this district has already addressed the precise issue of whether WAC 296-126-092(4) requires employers to pay for rest breaks separately from the piece-rate in *Helde II*. 2016 WL 1687961, at *3. There, the court held that even if an employer "made clear that the [piece-rate] compensation amount included payment for rest breaks, the Washington Supreme Court's decision in [*Sakuma*] would invalidate such an agreement." *Id.* This Court finds the holding in *Helde II* persuasive and adopts it. WAC 296-126-092(4) requires employers to pay for rest breaks separately from the piece-rate, even if the employer claims that rest breaks are factored into the piece-rate structure.

Schneider next argues that even if the rest break regulation applies, it is rendered invalid *per se* by the dormant Commerce Clause. (Dkt. No. 43 at 13.) "The dormant Commerce Clause is a limitation upon the power of the States, which prohibits discrimination against interstate commerce and bars state regulations that unduly burden interstate commerce." *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 795 (2016) (internal quotations and citations omitted). Schneider argues that because Plaintiffs' rest breaks take place wholly or almost wholly outside of Washington, the MWA and WAC 296-126-092(4) violate the dormant Commerce Clause by directly controlling commerce occurring outside of Washington. (Dkt. No. 43 at 14.)

For support, Schneider relies almost entirely on *Sam Francis* for the proposition that a "simple, well-established constitutional rule summarized [by the Supreme Court] in *Healy*" is that "the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the state's borders, whether or not the commerce has effects within the state." 784 F.3d at 1323 (quoting *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989)). Schneider's argument is that the MWA, which, as interpreted by *Sakuma*, would require pay for rest breaks

taken in different states, constitutes direct regulation of commerce outside of Washington. (Dkt. No. 43 at 16–17.)

In *Sam Francis*, the Ninth Circuit held that a California statute governing fine art sales, which required a royalty payment to the artist whenever "the seller resides in California *or* the sale takes place in California," violated the dormant Commerce Clause. 784 F.3d at 1323 (quoting Cal. Civ. Code § 986(a) (emphasis in original)). The court gave the example of a California resident with a part-time apartment in New York, who buys a sculpture in New York from a North Dakota artist. If she then sells the sculpture to a friend in New York, the Act required a royalty payment to the North Dakota artist, even though the sculpture, the artist, and the buyer had no connection to California. *Id.* The Ninth Circuit "easily conclude[d] that the royalty requirement, as applied to out-of-state sales by California residents, violates the dormant Commerce Clause." *Id.* Despite the obvious factual difference from the rest break regulation at issue here, Schneider's argument suffers from a fatal flaw. Both the Supreme Court and the Ninth Circuit have held that "*Healy* [] [is] not applicable to a statute that does not dictate the price of a product and does not 't[ie] the price of its in-state products to out-of-state prices.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 951 (9th Cir. 2013) (quoting *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003)). Because *Sam Francis* finds its underpinnings in *Healy*, and because the statute at issue does not deal with product price fixing, any argument attempting to apply *Sam Francis* to the facts of this case fails.

Schneider also cites to *Guy v. IASCO*, 2004 WL 1354300 (Cal. Ct. App. June 17, 2004), an unpublished case, for the proposition that "[t]he regulation of overtime pay of flight personnel who work in interstate and foreign commerce is a direct regulation of such commerce" that "violates the commerce clause." *Id.*, at *7 (citing *Healy*, 491 U.S. at 336). *Guy* is distinguishable. First, the court was operating under the assumption that plaintiffs were in fact working for Japan Airlines, Ltd., not the California company. *Id.*, at *4. Second, five of the six plaintiffs were not California residents, and the court was hesitant to apply "wage orders to nonresidents working

for a foreign corporation in interstate and foreign commerce, who make an occasional stop in California." *Id.* But most importantly, *Guy* relied on *Healy*, and predated *Ass'n des Eleveurs*, which calls *Guy*'s conclusion into question.

Because *Healy* and *Sam Francis* are inapplicable to this rest break regulation, the proper initial question is whether the state law at issue "discriminates on its face against interstate commerce." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007)). Discrimination means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 99 (1994). Schneider makes no attempt to argue that Washington's rest break provision facially discriminates against interstate commerce. Therefore, contrary to Schneider's assertion that *Sam Francis* controls, the proper test is "set forth in *Pike v. Bruce Church, Inc.*, 397 U.S.137, 142 (1970), which is reserved for laws 'directed to legitimate local concerns, with effects upon interstate commerce that are only incidental.'" *United Haulers Ass'n*, 550 at 346 (quoting *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978)). Under the *Pike* test, a nondiscriminatory state statute is valid unless it imposes a "clearly excessive [burden on interstate commerce] in relation to the putative local benefits." *Id.* (quoting *Pike*, 397 U.S. at 142).

Addressing the local benefit, "[s]tates possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum wage and other wage laws, laws affecting occupational health and safety, and workmen's compensation laws are only a few examples." *De Canas v. Bica*, 424 U.S. 351 (1976). The Washington Supreme Court has already addressed the application of the overtime provisions of the MWA to interstate truck drivers for hours worked outside of Washington. *Bostain v. Food Express, Inc.*, 153 P.3d 846 (2007). Critical to the court's holding that the overtime provisions of the MWA did not violate the dormant Commerce Clause was its determination that "[a]ssuring proper compensation for Washington employees is an important

legitimate local interest served by the overtime provision of the MWA." *Id.* at 705–06. Washington courts consistently find that the MWA promotes a local public benefit. *See Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 42 P.3d 1265, 1267 (Wash. 2002) (holding that Washington's remedial wage and hour statutes "should be liberally construed to advance the Legislature's intent to protect employee wages and assure payment") (quoting *Ellerman v. Centerpoint Prepress, Inc.*, 22 P.3d 795, 798 (Wash. 2001)); *Schilling v. Radio Holdings, Inc.*, 961 P.2d 371, 374 (1998) (finding that the Legislature "evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive [statutory] scheme to ensure payments of wages") (referencing Wash. Rev. Code § 49.48.030); *Dept. of Labor and Indus. v. Overnite Transp. Co.*, 834 P.2d 638, 642 (Wash. Ct. App. 1992) ("The [MWA] advances a legitimate local public interest."). The Court therefore concludes that the rest break provision furthers a legitimate public interest.

The Court next considers whether Washington's rest break provision imposes a clearly excessive burden on interstate commerce. Schneider makes no argument on this point. *Bostain* is again instructive. In *Bostain*, the Washington Supreme Court perceived no burden on interstate commerce because

> [i]n relevant part, the MWA regulates only employers who are doing business in Washington and who have hired Washington-based employees. Employers will need to identify those employees who are subject to Washington's MWA and keep track of total hours, but we do not believe either of these requirements constitutes and impermissible burden on interstate commerce.

153 P.3d at 855. Further, the court pointed out that "if an employer is subject to the MWA for an employee's wages, that employer would not be required, under a choice of laws analysis, to comply with another state's wage and hour statutes as to that employee." *Id.* at 856. Finally, although the Supreme Court has invalidated statutes that regulate the out-of-state conduct of business, *Healy*, 491 U.S. at 336, Schneider has not shown any extraterritorial effect because

"the MWA applies to Washington-based employees, and it is difficult to conceive of circumstances where one who does not qualify as the employer of a Washington-based employee would be subject to the MWA's . . . regulations." *Id.* The rest break regulation imposes little, if any, burden on interstate commerce. Because Schneider has not shown that the rest break regulation imposes a clearly excessive burden to interstate commerce in light of the public benefit, and because the issue of whether piece-rate employees are entitled to hourly pay for rest breaks was settled in *Helde*, Schneider's motion for summary judgment as to the rest breaks is DENIED.

4. Plaintiffs' Per Diem Deduction Claim

Schneider's employees have the option of a standard mileage rate plan, or a per diem mileage rate plan. (Dkt. No. 68-6 at 92.) If an employee chooses the per diem plan, then she receives two cents less per mile, however roughly half of her mileage rate is nontaxable, as opposed to the entire rate being taxable. (*Id.* at 89–90.) Under Washington law, an employer may only make deductions to an employee's wages in limited circumstances, and if it does so, "the employer [cannot] derive any financial profit or benefit from any of the deductions" made. WAC 296-126-028(3). Plaintiffs assert that the two-cent reduction constitutes an impermissible deduction because Schneider benefits from it.[3] (Dkt. No. 70 at 28.) Schneider asks this Court to find that Plaintiffs' per diem fails as a matter of law because (1) no "deduction" was made, (2) Plaintiff Mendis did not present evidence demonstrating that the per diem compensation plan deducted money from his wages, and (3) federal law preempts the Washington wage deduction regulation. (Dkt. No. 43 at 20–22.) All of Schneider's arguments fail.

Schneider first argues that the regulation does not define "deduct" and, looking to a dictionary to determine its meaning, requires that the Plaintiffs show the per diem plan "takes

[3] Schneider argued that Plaintiff Feola's per diem claim is time barred. (Dkt. No 43 at 20.) Plaintiffs concede this point. (Dkt. No. 84 at 6.)

away" or "subtracts" money from the wages earned. (*Id.* at 20–21.) Schneider's internal documents state that the per diem plan's "overall rate/mile is reduced by 2 cents to help cover Schneider's cost associated with non-deductible expenses . . . . and to protect Schneider's interests." (Dkt. No. 68-6 at 93.) For Schneider to argue that "reduce" cannot mean "deduct" as a matter of law is absurd and the Court will not entertain it. To its argument that Mendis did not present evidence that the per diem plan deducted money from his wages, the above cited exhibit does just that. Furthermore, this exact argument has again already been covered in *Helde I*. There, the district court held that the defendant's internal documents explaining its per diem plan created a question of fact concerning whether the plan created an impermissible deduction. *Helde v. Knight Transp.*, (*Helde I*) 982 F. Supp. 2d 1189, 1197 (W.D. Wash. 2013). Despite Schneider's assertion to the contrary (Dkt. No. 43 at 20–22; Dkt. No. 74 at 10–11), its internal documents, specifically its explanation of the per diem plan (Dkt. No. 68-6 at 92–95) create a question of fact. Schneider's threadbare attempt to distinguish *Helde I* fails.

Finally, Schneider argues that even if the per diem plan is an unauthorized wage deduction, the Washington regulation is preempted because it prohibits conduct expressly authorized by federal law, specifically the Internal Revenue Service ("IRS"). (Dkt. No. 43 at 22.) Federal law preempts state law when the two are in "irreconcilable conflict." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996). Irreconcilable conflict occurs when "the state law may 'stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Barnett Bank*, 517 U.S. at 31 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). The party claiming a preemption defense "bears the burden of proof." *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n.6 (9th Cir. 1995). As applied to employment law, the Supreme Court has emphasized that "preemption should not be lightly inferred in this area." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1987). Apparently, Schneider is arguing that because the IRS authorizes the per diem plan, that it also authorizes Schneider to deduct wages to "protect Schneider's interests" (Dkt. No. 68-6 at 93). However, Schneider has presented no

evidence to show that the IRS specifically authorizes an employer to pay its employees less for choosing the per diem plan or that the full purposes and objectives of Congress would be thwarted by eliminating the two-cent reduction. It is possible for an employer to offer the per diem plan while not deducting or reducing wages. In light of the presumption against preemption of state law, especially in employment cases, Schneider's preemption argument fails.

Accordingly, the Court DENIES Schneider's motion for summary judgment as to Plaintiff Mendis' per diem claim.

5. Plaintiffs' Overtime Claim

Washington law requires employers to pay their employees one and a half times the regular rate for hours worked over 40 hours per week. Wash. Rev. Code § 49.46.130. An exception to this rule applies to interstate truck drivers subject to the Federal Motor Carrier Act ("FMCA"), 49 U.S.C. § 3101 *et seq.*, "if the compensation system under which the truck . . . driver is paid includes overtime pay, reasonably equivalent to that required by [Wash. Rev. Code § 49.46.130], for working longer than 40 hours per week." Wash. Rev. Code 49.46.130(f). As to what constitutes reasonable equivalence, the WAC provides a formula for employers to show that they "compensate[] hours worked in excess of forty hours per week at an overtime rate of pay and distribute[] the projected overtime pay over the average number of hours projected to be worked." WAC 296-128-012(1)(a). Furthermore, "the department may evaluate alternative rates of pay and formulas . . . in order to determine whether the rates of pay . . . result in the driver receiving compensation reasonably equivalent to one and one-half times the base rate of pay for actual hours worked in excess of forty hours per week." WAC 296-128-112(1)(c). In other words, Schneider may satisfy the requirements of Revised Code of Washington section 49.46.130 and WAC 296-128-112 if it can show that under the piece-rate mileage plan, Plaintiffs earned a "reasonable equivalent" to what they would have had they been paid hourly. Using the local hourly rate that other truck companies pay their employees has been

found to be an acceptable starting base rate. *Helde I*, 982 F. Supp. 2d at 1201–202. For example, if the base rate for a local truck driver is $16 an hour, and an employee works 50 hours in a week, the employee would be paid $640 for the first 40 hours worked, and $240 for the ten overtime hours, totaling $860. If a plaintiff on a mileage based or piece-rate system receives the reasonable equivalent of $860 for 50 hours of work, then no overtime violation occurs.

Here, Schneider has submitted evidence that (1) Mendis received 125.6% of the median and 119.8% of the mean hourly rate, including overtime, of a light truck or delivery driver in Washington during the same period, (2) Mendis received 99.2% of the median and 101% of the mean hourly rate, including overtime, of a heavy and tractor-trailer truck driver in Washington during the same period, (3) Feola received 108.8% of the median and 107.8% of the mean hourly rate, including overtime, of a light truck or delivery driver in Washington during the same period, and (4) 86.2% of the median and 92.1% of the mean hourly rate, including overtime, of a heavy and tractor-trailer truck driver in Washington during the same period. (Dkt. No. 48-6 at 2; Dkt. No 48 at 4; Dkt. No. 48-4 at 2.) The Washington hourly rates were calculated using information from the Bureau of Labor Statistics in Washington. (Dkt. No. 48 at 3–4; Dkt. No. 48-4 at 2.) Plaintiffs claim Schneider's expert's comparative calculations fail because (1) Schneider does not have a separate overtime mileage rate, (2) Schneider never submitted a request to the Department of Labor and Industries ("DLI") for a determination as to Schneider's compliance with the reasonable equivalency requirement, and (3) the expert's calculations did not account for differences in pay rates based on experience. (Dkt. No. 70 at 26–28.) As to the first two arguments, neither are required under Revised Code of Washington section 49.46.130 or WAC 296-128-112. *Helde I*, 982 F. Supp. 2d at 1201. As to differences of pay rates based on experience, Plaintiffs have not suggested or given evidence demonstrating an appropriate alternative, and this Court held that "[i]n the absence of any evidence [from the plaintiffs] suggesting that an alternative 'base rate' is appropriate," a defendant's suggested hourly base rate, coupled with DLI's willingness "to accept the hourly rate trucking companies pay their

local or short-haul drivers as the 'base rate of pay,'" is acceptable. *Id.* at 1201–202. Accordingly, the Court finds there is no genuine issue of material fact as to Plaintiff Mendis' overtime claims because Schneider's piece-rate payment structure—in Mendis' case—is reasonably equivalent to what he would be paid hourly, including overtime, by another trucking company. Schneider's motion for summary judgment as to Plaintiff Mendis' claims is GRANTED.

However, Plaintiff Feola presents a different scenario, as he received 86.2% or 92.1% of the hourly rate for heavy or tractor-trailer truck drivers in Washington. (Dkt. No. 48-6 at 2; Dkt. No 48 at 4; Dkt. No. 48-4 at 2.) While the calculations are not disputed, Schneider's argument that "reasonable equivalent" means a "'moderate or acceptable degree'" and that "[n]o reasonable factfinder could find that 92 percent is anything other than 'to a moderate or acceptable degree' of 100 percent" is not well taken. (Dkt. No. 74 at 13 (quoting 2 Oxford English Dictionary (Compact Edition) at 2432 (1971)).) First, this argument ignores the fact that Mr. Feola alternatively received 86.2% of the median. Second, and more importantly, a trier of fact could most certainly find that receiving 86% of the wages one is entitled to under Washington law is not reasonably equivalent. For example, if a driver should have earned $75,000, but was only paid $69,000 (92 percent) or $64,500 (86 percent)—a difference of one to one and a half month's pay—a jury could find not only that it was not reasonably equivalent, but that is was a significant deviation from the legally required norm. Accordingly, Schneider's motion for summary judgment as to Plaintiff Feola's overtime claim is DENIED.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend the complaint (Dkt. No.49) is GRANTED in part and DENIED in part. Plaintiffs' may amend the complaint to add Plaintiffs Ash and Arbaugh, but may not add additional claims. Plaintiffs' motion to certify a question to the Washington Supreme Court (Dkt. No. 73) is DENIED. Defendant Schneider's motion for summary judgment (Dkt. No. 43) is GRANTED in part and DENIED in part. It is

GRANTED as to Plaintiffs' "on duty, not driving" and training time claims, as well as Plaintiff Mendis' overtime claim. It is DENIED as to Plaintiffs' rest break and per diem claims, and Plaintiff Feola's overtime claim.

DATED this 10th day of November 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE