THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15
16

BALAPUWADUGE MENDIS,
MICHAEL FEOLA, ANDREA
ARBAUGH, and EDWARD ASH, on
their own and on behalf of all others
similarly situated,

Plaintiffs,

v.

SCHNEIDER NATIONAL CARRIERS,
INC.,

Defendant.

CASE NO. C15-0144-JCC

ORDER GRANTING MOTION TO
CERTIFY CLASS

17
18
19

    This matter comes before the Court on Plaintiffs' motion for class certification (Dkt. No.
51). Having thoroughly considered the parties' briefing and the relevant record, the Court finds
oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

20
21
22
23
24
25
26

I.    BACKGROUND

    Plaintiffs Balapuwaduge Mendis, Michael Feola, Andrea Arbaugh, and Edward Ash are
current and former truck drivers for Defendant Schneider. (Dkt. No. 114 at 1, 2.) Plaintiffs are
Washington residents with commercial driver's licenses issued by the State of Washington. (*Id.*
at 3; Dkt. No. 51 at 12.) Schneider is a truckload company that services customers throughout the
United States. (Dkt. No. 114 at 1.) Schneider maintains a drop lot in Sumner, Washington, where
drivers may park their equipment. (Dkt. No. 95 at 9.) Plaintiffs allege that Schneider has engaged

in a common scheme of wage and hour violations against its driver employees. (Dkt. No. 114 at 2.) Specifically, "[t]his scheme has included failing to pay driver employees for all hours worked, making unlawful [wage] deductions . . ., failing to [issue] itemized wage statements, and failing to pay driver employees for the rest breaks to which they are entitled" in violation of Washington law. (*Id.*) Plaintiffs now seek certification under Federal Rule of Civil Procedure 23 and move for an order certifying the following proposed class:

> All current and former employees of Schneider National Carriers, Inc. who, at any time from December 30, 2011 through the date of final disposition, worked as drivers for the company while residing in the state of Washington.

(Dkt. No. 51 at 10.)

## II.      DISCUSSION

### A.      Legal Standard for Class Certification

A party seeking to litigate a claim as a class representative must affirmatively satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). In determining whether the plaintiffs have carried this burden, the Court must conduct a "rigorous analysis." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). This inquiry may "entail some overlap with the merits of the plaintiff's underlying claim[,]" though the Court considers the merits only to the extent that they overlap with the requirements of Rule 23 and allow the Court to determine the certification issue on an informed basis. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). The ultimate decision to certify a class is within the Court's discretion. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

### B.      Rule 23(a) Requirements

Rule 23(a) requires that one or more members of a class may sue as a representative plaintiff only if (1) the class is so numerous that joinder is impracticable; (2) there are common

questions of law or fact to the class; (3) the claims or defenses of representative parties are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the absent class members. Fed. R. Civ. P. 23(a); *Mazza*, 666 F.3d at 588 (Rule 23(a) requires "numerosity, commonality, typicality and adequacy of representation"). Schneider contests certification on commonality, typicality, and adequacy grounds. (Dkt. No. 95 at 18–23.) Because a rigorous analysis is required regardless of a defendant's opposition, the Court addresses each requirement independently.

### 1. Numerosity

Rule 23(a)'s first requirement is satisfied when the proposed class is sufficiently numerous to make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement requires the examination of the specific facts of each case, though "in general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) (unpublished); *see also Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 652 (W.D. Wash. 2011) (certifying a class of forty-three to fifty-four workers). Here, the putative class contains between 150 and 890 members. (Dkt. No. 114 at 4; Dkt. No. 51 at 25.) Schneider does not dispute numerosity. (Dkt. No. 95 at 18.) The Court finds that the numerosity requirement is met.

### 2. Commonality

Under Rule 23(a)(2)'s commonality requirement, a plaintiff must demonstrate that the "class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza*, 666 F.3d at 588 (quoting *Dukes*, 564 U.S. at 350). The key inquiry is not whether the plaintiffs have raised common questions, but whether "class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 131 S. Ct. at 2551) (emphasis in original). Every question of law or fact need not be common to the class. Rather, all Rule 23(a)(2) requires is "a single significant

question of law or fact." *Id.* (quotation omitted); *see Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1041–42 (9th Cir. 2012). The existence of "shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (amended).

"[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the prerequisites for class certification[]," including commonality. *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359–60 (E.D.N.Y. 2011) (gathering cases and noting that numerous courts have found wage claims are perhaps "the most perfect questions for class treatment"). Plaintiffs argue that their claims present numerous common factual and legal issues, including whether, under Washington law:

- Schneider is obligated to compensate class members for rest breaks;
- Schneider's per diem program results in a deduction from the wages of class members who are enrolled in the program to the benefit of Schneider;
- Schneider's fuel card program results in deductions from the wages of class members who use those cards to the benefit of Schneider;
- Schneider obtains a benefit from the wage deductions it takes from class members to pay for safety equipment drivers are required to purchase as a condition of their employment;
- Schneider is obligated to pay overtime compensation to class members; and
- Schneider willfully withheld wages.

(Dkt. No. 51 at 27; Dkt. No. 114 at 10.)

Schneider disputes commonality on two grounds: (a) putative class members would require individualized inquiries to determine whether Washington law applies to their claims, and (b) individualized inquiries are required to determine whether each putative class member

was entitled to overtime pay. (Dkt. No. 95 at 18–19.)

a. *Applicability of Washington Law*

Schneider argues that because some putative class members park their trucks or begin and end their routes at the Operating Center in Portland, Oregon, they are not Washington-based employees. (Dkt. No. 95 at 18.) Essentially, Schneider argues that if some class members are not Washington-based, then another state's wage laws are applicable.

Washington's wage and hour laws apply to "employers who are doing business in Washington and who have hired Washington-based employees." *Bostain v. Food Express, Inc.*, 153 P.3d 846, 855 (Wash. 2007). Whether a putative class member is Washington-based "depend[s] on factors that courts routinely use for deciding choice of law issues." *Id.* at 852, n.5. Washington courts apply a two-step approach to choice of law questions. *See Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 550 (W.D. Wash. 2008). First, the court determines whether an actual conflict between applicable state laws exists. *Id.* Second, if there is a conflict, the court follows the most significant relationship test. *See Burside v. Simpson Paper Co.*, 864 P.2d 937, 940–41 (Wash. 1994).

Here, an actual conflict exists because Oregon law provides fewer protections to Oregon-based employees than Washington law provides to Washington-based employees. *See, e.g.*, *Gafur v. Legacy Good Samaritan Hosp. & Med. Ctr.*, 185 P.3d 446, 453 (Or. 2008) (holding that violation of the rest break requirement does not give rise to a wage claim); Ore. Admin. Rule 839-020-0125(3)(a) (excluding employees regulated by the Motor Carrier Act from Oregon's overtime laws); Ore. Rev. Stat. § 652.610(3)(b) (allowing wage deductions so long as they are authorized by the employee, even if they benefit the employer). The Court therefore turns to the most significant relationship test.

The most significant relationship test requires the Court to consider "which contacts are most significant and to determine where these contacts are found." *Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash. 1997). If the contacts are evenly balanced, courts evaluate

ORDER GRANTING MOTION TO CERTIFY
CLASS
PAGE - 5

1   "the interests and public policies of the concerned states, to determine which state has the greater

2   interest in determination of the particular issue." *Zenaida-Garcia v. Recovery Sys. Tech., Inc.*,

3   115 P.3d 1017, 1020 (Wash. Ct. App. 2005).

4       Plaintiffs point out that the putative class members are residents of Washington and have

5   Washington-issued commercial driver's licenses (CDL). (*See, e.g.*, Dkt. No. 68-5; Dkt. No. 68-

6   6.) Washington is listed as the driver's state of residence on her paystub and Schneider pays

7   Washington-specific taxes. (Dkt. No. 68-2 at 63–64.) If a driver asks to be mailed her paystub, it

8   is mailed to the Washington address on the paystub. (Dkt. No. 113-1 at 25–27.)

9       Schneider, on the other hand, argues that because many putative class members travel

10  from their homes in Washington to the operating center in Portland, Oregon, to begin their

11  routes, Oregon has the most significant relationship.[1] (Dkt. No. 95 at 18–19.)

12      The Court agrees with Plaintiffs. Given the significant contacts with the state,

13  Washington's wage and hour laws apply to the proposed class members. Even if the contacts

14  were evenly balanced, Washington's "long and proud history of being a pioneer in the protection

15  of employee rights" would tip the scale in Washington's favor. *Drinkwitz v. Alliant Techsystems,*

16  *Inc.*, 996 P.2d 582, 586 (Wash. 2000). Washington law should be applied to Washington-based

17  employees. To the extent that Schneider's argument is in fact a challenge to ascertainability, in

18  order for a putative class member to be Washington-based, she must reside in Washington, have

19  a Washington-issued CDL, and have Washington listed on her paystub. Although potentially

20  time consuming, the record in this case thus far demonstrates that the parties will be able to

21  determine who should be included in the class.

22          b. *Plaintiffs' overtime claim*

23      Washington law requires employers to pay their employees one and a half times the

24  _____

25      [1] Based on Defendant's argument, any number of states could have the most significant
26  relationship because some of the drivers start and end their routes from multiple states. (Dkt. No.
    111 at 9; Dkt. No. 113-1 at 2, 28–162.)

ORDER GRANTING MOTION TO CERTIFY
CLASS

regular rate for hours worked over 40 hours per week. Wash. Rev. Code § 49.46.130. An

exception to this rule applies to interstate truck drivers subject to the Federal Motor Carrier Act

("FMCA"), 49 U.S.C. § 3101 *et seq.*, "if the compensation system under which the

truck . . . driver is paid includes overtime pay, reasonably equivalent to that required by [Wash.

Rev. Code § 49.46.130], for working longer than 40 hours per week." Wash. Rev. Code

§ 49.46.130(f). In other words, Schneider may satisfy the requirements of Revised Code of

Washington section 49.46.130 and Washington Administrative Code 296-128-112 if it can show

that under the piece-rate mileage plan, Plaintiffs earned a "reasonable equivalent" of the local

hourly rate, including overtime, that other truck companies pay their employees.

Schneider argues that Plaintiffs' overtime claim should not be certified because it will

require individualized inquiries. (Dkt. No. 95 at 19.) Schneider cites this Court's order on its

motion for summary judgment, in which the Court dismissed Plaintiff Mendis' overtime claim

because it was undisputed that he received more than the reasonable equivalent of what he would

be paid hourly, including overtime, by another trucking company. (Dkt. No. 92 at 16.) Plaintiff

Feola's claim survived summary judgment because a jury could conclude that 86% or 92% was

not the reasonable equivalent of what he would have been paid hourly, including overtime. (*Id.*)

Schneider argues that because each driver will have earned a different percentage of the

established hourly and overtime rate, the jury will have to determine liability for each individual

plaintiff. (Dkt. No. 95 at 20–21.) Put another way, not every proposed class member suffered an

overtime injury.

However, the inclusion of uninjured class members is not a basis for denying

certification. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016).[2] Should

Plaintiffs' prove an overtime violation, "such fortuitous non-injury to a subset of class members

---

[2] The Court notes that *Torres* was discussing the predominance requirement, however the predominance requirement has been construed more rigorously than the commonality requirement. *Hanlon*, 150 F.3d at 1019.

1   does not necessarily defeat certification of the entire class, particularly as the district court is well

2   situated to winnow out those non-injured members at the damages phase of the litigation." *Id.*

3   The fact that some members of a class did not experience an injury is "an argument not for

4   refusing to certify the class but for certifying it and then entering a judgment that would largely

5   exonerate [the defendant]." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013).

6        As to commonality, the question of whether Schneider pays its drivers the "reasonable

7   equivalent" of what a truck driver in Washington being paid hourly would receive for the same

8   number of hours worked is a common question that can be resolved once for the entire class.[3]

9   The jury only need determine what percentage constitutes "reasonable equivalence." For

10   example, the jury could determine that payment of less than 97% is not reasonably equivalent.

11   From there it becomes an issue of damages. If a class member received less than 97% of the

12   established hourly rate, including overtime, for the actual hours she worked, then she is entitled

13   to damages. Each damage inquiry will of course be different, but "damages determinations are

14   individual in nearly all wage-and-hour class actions" and "the presence of individualized

15   damages cannot, by itself, defeat class certification." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510,

16   513–14 (9th Cir. 2013) (citations omitted).

17        However, because some putative class members received "reasonably equivalent"

18   compensation as a matter of law, i.e. 100% or more, the Court finds a subclass appropriate. Fed.

19   R. Civ. P. 23(c)(5); *see also Fox v. Prudent Res. Trust*, 69 F.R.D. 74, 77 (E.D. Pa. 1975) ("The

20   court has power to . . . create subclasses as to one or more counts of the complaint."); *In re*

21   *Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, 2010 WL 5387793, at *5 (N.D. Cal.

22   Dec. 22, 2010) (certifying a nationwide subclass *sua sponte*). Furthermore, because not all

23

24

25       [3] To hold otherwise would allow employers of truck and bus drivers to avoid classwide resolution of its employees' overtime claims under Revised Code of Washington section

26   49.46.130(f) and Washington Administrative Code 296-128-112 by opting to pay them through a piece-rate mileage plan.

putative class members were eligible, or opted, for the per diem pay plan, a second subclass is warranted. Accordingly, the Court creates the following subclasses:

      i. Individuals who (1) meet the criteria for membership in the class, and (2) received less than 100% of what they would have been paid hourly, including overtime, using the local hourly rate.[4]

      ii. Individuals who (1) meet the criteria for membership in the class, and (2) were enrolled in the per diem pay plan and received $0.02 less per mile as a result.

As to the other claims, the Court finds that the rest break, per diem, payroll card deduction, safety equipment deduction, and willful withholding of wages claims present questions that are suitable for classwide resolution.[5] Each claim hinges on the question of whether Schneider's system of compensation violates Washington law. Accordingly, the commonality requirement is satisfied.

### 3. Typicality

Plaintiffs must next show that their claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (internal quotation marks omitted). The commonality and typicality inquiries, which "tend to merge," both serve as "guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the

---

[4] These rates have already been established during discovery. (*See* Dkt. No. 92 at 14–15, Dkt. No. 95 at 19–20.)

[5] The payroll card and safety equipment deduction claims are currently the subject of a pending motion to dismiss before the Court. (Dkt. No. 115.) The Court declines to exercise its discretion as to creating subclasses for the payroll card and safety equipment deduction claims until it rules on the motion to dismiss.

1   class claims are so interrelated that the interests of the class members will be fairly and

2   adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551, n.5 (quotations and citation

3   omitted). Ultimately, representative class claims are typical if they are "reasonably co-extensive

4   with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d

5   at 1020; *see Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (noting the "permissive"

6   nature of the typicality inquiry).

7           Schneider does not allege any conflicts of interest between the named Plaintiffs and

8   proposed class members. Rather, Schneider argues that Plaintiffs have not shown typicality for

9   the same reasons given in its opposition to commonality: (1) Washington law may not apply to

10  some of the putative class members, and (2) some putative class members will have suffered no

11  overtime injury. (Dkt. No. 95 at 22–23.) For the reasons set forth previously in this order, the

12  Court rejects Schneider's argument. Plaintiffs' claims are typical of the claims of other class

13  members because they arise out of the same alleged conduct and are based on the same legal

14  theories. Rule 23(a)(3) is satisfied.

15          **4.  Adequacy of Representation**

16          Finally, Rule 23(a)(4) requires that the named plaintiff "fairly and adequately" protect the

17  interests of the class. Fed. R. Civ. P. 23(a)(4). To determine whether the representative parties

18  will adequately represent a class, the Court must examine (1) whether the named plaintiff and her

19  counsel have any conflicts of interest with other class members; and (2) whether the named

20  plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *Ellis*, 657

21  F.3d at 985 (citing *Hanlon*, 150 F.3d at 1020). As the Ninth Circuit has noted, adequate

22  representation depends upon "an absence of antagonism between representatives and absentees[]

23  and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985

24  (quotations and citation omitted).

25          Schneider does not allege any conflicts of interest between the named Plaintiffs and

26  proposed class members. Rather, Schneider argues that the named Plaintiffs were Van Truckload

1   and Intermodal drivers, and not Dedicated Dollar Tree or Daily Rate drivers, and are therefore

2   inadequate representatives. (Dkt. No. 95 at 23.) However, that named Plaintiffs may have "had

3   different duties and performed different types of work is not particularly relevant to whether they

4   are similarly situated with respect to [the class members'] claims." *Mendez v. Radec Corp.*, 232

5   F.R.D. 78, 92 (W.D.N.Y 2005) (citation omitted). Schneider also repeats its application of

6   Washington law argument, (Dkt. No. 95 at 23), which has already been addressed. The Court

7   finds that the named Plaintiffs will adequately represent the class and that Plaintiffs' counsel are

8   competent to prosecute this action. (Dkt. No. 68 at 6–11.) The adequacy requirement is met.

9   Plaintiffs have satisfied the four requirements of Rule 23(a). The Court now moves on to address

10  the Rule 23(b)(3) requirements.

11       **C.**     **Rule 23(b)(3) Requirements**

12       After satisfying the Rule 23(a) prerequisites, a plaintiff must also demonstrate that the

13  case is maintainable as a class action under one of the three Rule 23(b) prongs. Here, Plaintiffs

14  argue that the class is certifiable under Rule 23(b)(3). Rule 23(b)(3) requires two separate

15  inquiries: (1) do issues common to the class "predominate" over issues unique to individual class

16  members, and (2) is the proposed class action "superior" to other methods available for

17  adjudicating the controversy? Fed. R. Civ. P. 23(b)(3). Ultimately, certification under Rule

18  23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling

19  their differences in a single action." *Hanlon*, 150 F.3d at 1023 (quoting 7A Charles Alan Wright,

20  Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (2d ed. 1986)).

21       **1.**     **Predominance**

22       The predominance inquiry under Rule 23(b)(3) "tests whether proposed classes are

23  sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.*

24  *Windsor*, 521 U.S. 591, 615–16 (1997); *Abdullah*, 731 F.3d at 964. This inquiry presumes the

25  existence of common factual or legal issues required under Rule 23(a)'s "commonality" element,

26  focusing instead "on the relationship between the common and individual issues." *Hanlon*, 150

1   F.3d at 1023. "When common questions present a significant aspect of the case and they can be

2   resolved for all members of the class in a single adjudication, there is a clear justification for

3   handling the dispute on a representative rather than on an individual basis." *Id.*

4        Schneider contests predominance by arguing that the question of whether Washington

5   law applies would require separate adjudication of that defense for every class member. (Dkt.

6   No. 95 at 24.) But that question is settled. The primary issue for resolution here is whether

7   Schneider's uniform policies and practices—as they relate to compensation for rest breaks,

8   alleged wage deductions, and overtime pay—violate Washington law. A district court in

9   California recently certified a class with similar wage and hour claims against Schneider, ruling

10  that "[w]hether such a compensation scheme is legal is a question of law which may be

11  determined on a class-wide basis and which predominates over individualized issues." *Bickley v.*

12  *Schneider Nat'l Carriers, Inc.*, Case No. 08-05806-JSW, (Dkt. No. 168 at 13) (N.D. Cal. Sept. 7,

13  2012); *see also* Dkt. No. 68-1 at 24.

14       Should Schneider be found liable for any of the alleged violations, the amount of

15  damages to which each class member is entitled must be calculated. But the fact that damages

16  vary for each class member, as they will in virtually any wage and hour class action, does not

17  preclude certification. *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th

18  Cir. 2016) (affirming district court's holding that different damages calculations in wage and

19  hour class action did not defeat predominance); *Helde v. Knight Transp., Inc.*, 2013 WL

20  5588311, at *5 (W.D. Wash. Oct. 9, 2013) (holding that the ministerial nature of individualized

21  damage issues did not defeat predominance). Because common issues predominate over

22  individualized issues, the predominance requirement is satisfied.

23            **2.  Superiority**

24       Rule 23(b)(3) also requires the Court to find that a "class action is superior to other

25  available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

26  23(b)(3). When undertaking this inquiry, the Court considers (1) the interest of individuals

within the class in controlling their own litigation; (2) the extent and nature of any pending litigation commenced by or against the class involving the same issues; (3) the convenience and desirability of concentrating the litigation in a particular forum; and (4) the manageability of the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D); *Zinzer v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). Consideration of these factors must "focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinzer*, 253 F.3d at 1190.

Here, a class action is superior to other available methods of adjudicating the class members' claims. Classwide resolution of the common issues is superior to filing multiple and duplicative lawsuits which may yield different results. Further, there are no other pending lawsuits, concentrating Washington state law claims in this forum is desirable, the damages can be managed effectively, and class certification here promotes judicial economy. Plaintiffs satisfy the requirements of Rule 23(b)(3).

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification (Dkt. No. 51) is GRANTED. The Court ORDERS the class be certified as:

> All current and former employees of Schneider National Carriers, Inc. who, at any time from December 30, 2011 through the date of final disposition, worked as drivers for the company while residing in the state of Washington.

The Court further ORDERS the certification of the following subclasses:

> i.   Individuals who (1) meet the criteria for membership in the class, and (2) received less than 100% of what they would have been paid hourly, including overtime, using the local hourly rate.
>
> ii.   Individuals who (1) meet the criteria for membership in the class, and (2) were enrolled in the per diem pay plan and received $0.02 less per mile as a result.

The Court APPOINTS Plaintiffs Balapuwaduge Mendis, Michael Feola, Andrea Arbaugh, and Edward Ash as class representatives, and Terrell Marshall Law Group PLLC and Rekhi & Wolk P.S. as class counsel. Finally, the Court APPROVES mailing of notice to the class.

DATED this 7th day of February 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE